**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| GARRETT HOFFMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21cv1443 (DJN/WEF) |
| | ) | |
| BEAR CHASE BREWING | ) | |
| COMPANY, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Garrett Hoffman's ("Plaintiff") motion seeking an award of liquidated damages (Dkt. 86) and his motions seeking attorneys' fees and costs (Dkts. 88, 93, 104, 114). Plaintiff's motions are filed pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 59(e)[1] and 54(d)[2] as the prevailing party in this action. Pursuant to 28 U.S.C. § 636(b)(1)(C) and the Court's Order of September 18, 2023 (Dkt. 112), the undersigned magistrate judge is filing with the Court these proposed findings of fact and recommendations, a copy of which will be provided to all interested parties. For the reasons set forth below, the undersigned recommends Plaintiff's motion seeking an award of liquidated damages be **GRANTED**. The undersigned further recommends Plaintiff's motions for attorneys' fees and costs be **GRANTED** but for an amount less than Plaintiff requested.

---

[1]     Fed. R. Civ. P. 59(e) applies to the issue of liquidated damages.

[2]     Fed. R. Civ. P. 54(d) applies to the issue of attorneys' fees and costs.

**Factual and Procedural Background**

*Factual Background*

Bear Chase Brewing Company, LLC ("Bear Chase") is a large outdoor venue that serves food, beer, and wine to its patrons. (Dkt. 90, Trial Transcript at 32–33). From July 2018 to June 2021, Plaintiff was employed by Bear Chase, initially as a barback, cleaning tables and performing various tasks as needed, and later as a bartender. (*Id*. at 29). As both a barback and bartender, Plaintiff was paid an hourly "cash wage" that was less than the minimum wage required by federal law, but Plaintiff also received tips from customers to supplement his salary. (*Id*. at 37–38, 45–46; Dkt. 91, Trial Transcript at 65–66, 68). Under some circumstances, the FLSA permits employers of "tipped employees"—with notice to the employee—to credit the employee's tips toward the employer's responsibility to pay the employee the required minimum wage. *See* 29 U.S.C. §§ 206, 203(m)(2)(A). This process is known as a "tip credit." (*Id*.) In this case, Bear Chase used a tip credit to supplement Plaintiff's hourly wage. (Dkt. 90 at 38, 46–47; Dkt. 91 at 64). To distribute tips, Bear Chase operated a "tip pool," meaning that any tip left by a customer was divided among various employees. (*Id*.) A tip pool is permitted by the FLSA provided it complies with certain statutory and regulatory requirements, one of which is that managers and supervisors are not permitted to take money from an employee tip pool. *See* 29 U.S.C. § 203(m)(2)(B).

*Plaintiff's Complaint*

Plaintiff filed his Complaint in this matter on December 28, 2021.[3] (Dkt. 1). Plaintiff's Complaint alleged that Bear Chase willfully violated the FLSA by failing to give Plaintiff

---

[3]     Initially, Plaintiff also named Chris Spring as an individual defendant. (Dkt. 1). Plaintiff later dismissed its claim against Mr. Spring. (Dkts. 17, 18).

sufficient notice of the tip credit as required by 29 U.S.C. §§ 206, 203(m)(2)(A) (Count I) and by unlawfully including managers and supervisors in the tip pool in violation of 29 U.S.C. § 203(m)(2)(B) (Count II).  Bear Chase was properly served with the Summons and Complaint and thereafter filed its Answer. (Dkts. 5, 7).  The Court entered the Scheduling Order on April 4, 2022, which began the discovery process.  (Dkts. 9, 12).

*Discovery Motions*

The parties litigated a single discovery dispute.  On August 5, 2022, Plaintiff filed a Motion to Compel in which he sought "all documents that comprise the personnel file of each [t]ipped [e]mployee . . . from January 1, 2018 to the present."  (Dkt. 15).  Bear Chase filed its opposition to the Motion to Compel, and Plaintiff filed his reply.  (Dkts. 22, 23).  On August 26, 2022, the undersigned held a hearing on the motion and after considering the pleadings and argument of counsel, the undersigned granted Plaintiff's Motion to Compel but significantly narrowed the scope of the discovery request.  (Dkt. 27).

*Bear Chase's Motion for Summary Judgment and Plaintiff's Motion for Sanctions*

On August 12, 2022, Bear Chase filed a Motion for Summary Judgment supported by a memorandum of law and exhibits. (Dkts. 19, 20).  One such exhibit was a declaration of Bear Chase's general manager, Chris Suarez, who was also deposed as Bear Chase's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). (Dkt. 20, Exhs. A, B).  In support of its motion, Bear Chase argued the record was sufficient to find as a matter of law (1) that Plaintiff received proper notice of the tip credit (Count I of Plaintiff's Complaint); (2) that the tip pool did not include managers or supervisors (Count II of Plaintiff's Complaint); and (3) even if Plaintiff successfully proved the violations of the FLSA as alleged in Count I and Count II of the Complaint, no reasonable jury could find those violations to be willful.  (*Id*.)  On August 26, 2022, Plaintiff filed

his opposition to Bear Chase's Motion for Summary Judgment, also supported by a memorandum of law and exhibits. (Dkt. 28). On September 1, 2022, Bear Chase filed its reply to Plaintiff's opposition to the Motion for Summary Judgment. (Dkt. 31). On September 6, 2022, the Court referred Bear Chase's Motion for Summary Judgment to the undersigned pursuant to 28 U.S.C. § 636 for the preparation of a Report and Recommendation. (Dkt. 32).

On August 26, 2022, the same day Plaintiff filed his opposition to Bear Chase's Motion for Summary Judgment, Plaintiff also filed a Motion for Sanctions seeking to exclude the Suarez declaration as a "sham affidavit." (Dkt. 29). Generally, Plaintiff argued it was inappropriate to supplement the deposition testimony of a Fed. R. Civ. P. 30(b)(6) witness with a declaration. (*Id.*) Bear Chase filed its opposition to Plaintiff's Motion for Sanctions, and Plaintiff then filed a reply. (Dkts. 33, 34). On September 16, 2022, the undersigned held a hearing on the motion and after considering the pleadings and argument of counsel the undersigned denied Plaintiff's Motion for Sanctions. (Dkt. 36).

On September 16, 2022, the undersigned also heard oral argument on Bear Chase's Motion for Summary Judgment. (Dkt. 35). At the conclusion of the hearing, the undersigned took the matter under advisement to prepare a Report and Recommendation and permitted counsel to file additional briefing. (*See* Dkts. 37, 38). On January 18, 2023, the undersigned filed a Report and Recommendation in which the undersigned recommended that the Court deny Bear Chase's Motion for Summary Judgment as to whether Plaintiff received proper notice of the tip credit (Count I) and whether the tip pool included managers or supervisors (Count II), but granted summary judgment as to whether those violations, even if proven at trial, could be willful. (Dkt. 51).[4] On February 1, 2023, both parties noted their objections to the Report and Recommendation.

_____

[4] The undersigned also addressed two issues belatedly raised by the parties. First, in

(Dkts. 52, 53).  On March 3, 2023, the Court overruled the objections and adopted the Report and Recommendation in its entirety. (Dkts. 56, 57).

*Motions in Limine*

The parties litigated three motions *in limine* that addressed multiple types of evidence and presented numerous issues to be resolved by the Court.  Bear Chase filed its First Motion *in Limine* on October 7, 2022.  (Dkt. 39).  This motion addressed Plaintiff's late notice of his claim that kitchen staff were also improperly included in the tip pool.  (*Id*.)  Plaintiff filed his opposition on October 11, 2022 (Dkt. 44), and Bear Chase filed its reply on October 14, 2022. (Dkt. 47).  On May 8, 2023, the Court granted Bear Chase's motion excluding evidence related to any member of the kitchen staff participating in the tip pool.  (Dkt. 74).

Plaintiff filed his First Motion *in Limine* on October 7, 2022 (Dkt. 42), Bear Chase filed its opposition on October 14, 2022 (Dkt. 48), and Plaintiff filed his reply on October 17, 2022.  (Dkt. 49).  Plaintiff filed his Second Motion *in Limine* on April 21, 2023 (Dkt 65), and Bear Chase filed its opposition on April 28, 2023. (Dkt. 66).  Together, Plaintiff's two motions raised sixteen (16) separate challenges to specific evidence or general categories of evidence.  The Court denied Plaintiff's motions and in so doing rejected some arguments on the merits, determined some issues to be moot, and deferred ruling on one issue until trial.  (Dkts. 70, 74).

---

Plaintiff's response to Bear Chase's Motion for Summary Judgment, Plaintiff raised for the first time that the kitchen staff were also improperly included in the tip pool.  The undersigned found *sua sponte* that this claim was not properly plead in the Complaint and recommended it be excluded at trial.  Next, at oral argument, the parties raised a fifth issue to be addressed by the Court, which was whether Bear Chase's alleged failure to provide notice to Plaintiff of its use of the tip credit as set forth in Count I constituted a continuing violation of the FLSA.  Here, the undersigned agreed with Plaintiff and recommended that the Court find any violation of the FLSA under this theory does constitute a continuing violation.

*Trial*

Trial before a jury commenced on May 9, 2023, and after three consecutive days of testimony, each side rested on May 11, 2023. (Dkts. 76–78, 90–92).[5]  During the three days of trial, the jury heard from ten (10) witnesses and the parties introduced thirty-five (35) total exhibits. (*Id*.)  On May 12, 2023, the jury heard closing arguments, were given instructions of law by the Court, and conducted their deliberations. (Dkt. 80).  That same day, the jury returned a verdict in favor of the Plaintiff on both counts and awarded $7,966.46 in damages on Count I (failure to give notice of the tip credit) and $26,279.15 in damages on Count II (unlawfully including managers and supervisors in the tip pool), for a total damages award of $34,245.61.  (Dkts. 83, 85).

*Post-Trial Motions*

On June 6, 2023, Bear Chase filed a Motion for Judgment as a Matter of Law.  (Dkt. 94).  On June 20, 2023, Plaintiff filed his opposition (Dkt. 102) and on June 26, 2023, Bear Chase filed its reply (Dkt. 104).  On August 4, 2023, the Court heard argument on the motion and took the matter under advisement. (Dkt. 110).  On September 18, 2023, the Court denied Bear Chase's motion. (Dkt. 112).

The remaining post-trial motions, including Plaintiff's motion seeking an award of liquidated damages (Dkt. 86) and his motions seeking attorneys' fees and costs (Dkts. 88, 93, 104, 114), are addressed below.

## Plaintiff's Motion for Liquidated Damages

The FLSA provides for liquidated damages in an amount equal to the actual damages suffered by the employee.  *See* 29 U.S.C. § 216(b).  The liquidated damages provision applies to

---

[5]     Prior to trial, on March 21, 2023, the parties engaged in a full day settlement conference with the undersigned.

both Count I, the minimum wage violation contrary to 29 U.S.C. §§ 206 and 203(m)(2)(A), as well as Count II, the unlawful tip pool, contrary to 29 U.S.C. § 203(m)(2)(B).  (*Id*.)  As to Count I, § 216(b) states, in relevant part, that "[a]ny employer who violates the provisions of section 206 . . . shall be liable to the employee . . . affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages."  Similarly, as to Count II, § 216(b) states, in relevant part, that "[a]ny employer who violates the provisions of section 203(m)(2)(B) . . . shall be liable to the employee  .  .  .  affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."  The jury awarded and the Court upheld an award of $34,245.61 to Plaintiff. (Dkts. 83, 85, 112).  Plaintiff now seeks an "additional equal amount in liquidated damages" resulting in a total damages award of $68,491.22.  (Dkt. 86).  Bear Chase objects to the award of liquidated damages. (Dkt. 96).

Although on its face 29 U.S.C. § 216(b) contains no qualifying language, "a district court, in its sound discretion, may refuse to award liquidated damages if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 132 (4th Cir. 2015) (internal quotation marks and citation omitted).  As Bear Chase notes, "this provision protects employers who violate the statute but 'who had reasonable grounds for thinking the law was other than it turned out to be.'"  *Id*. (quoting *Thomas v. Howard Univ. Hosp.*, 39 F.3d 370, 373 (D.C. Cir. 1994)).  "'[G]ood faith' and 'reasonable grounds' are both measured objectively, *see* 29 C.F.R. § 790.22(c), and establishing either element is sufficient to satisfy the statute."[6]  *Id*. (citing *Mayhew v. Wells*, 125

---

[6]     Bear Chase asserts that a finding of  either "good faith" or "reasonable grounds" is

Case 1:21-cv-01443-DJN-WEF Document 120 Filed 03/19/24 Page 8 of 25 PageID# 3167

F.3d 216, 220 (4th Cir. 1997)). Bear Chase concedes that to satisfy the subjective prong, an employer must show that it had "an honest intention to ascertain what [the FLSA] requires and to act in accordance with it." *Munston v. MKI Sys. Inc.*, 951 F. Supp. 603, 612–613 (E.D. Va. 1997), *vacated on other grounds*, 121 F.3d 699 (4th Cir. 1997). Bear Chase shoulders the burden to establish the unfairness of imposing liquidated damages. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011) ("The employer bears the burden of proof in establishing this defense.") (citing *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985)); *Walsh v. Medical Staffing of America,* 580 F. Supp. 3d 216, 230 (E.D. Va. 2022), *vacated on other grounds*, No. 22-1290, 2023 WL 3735221 (4th Cir. May 31, 2023) ("The employer has the 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'") (quoting *Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984)). Here, Bear Chase cannot sustain its burden.

Bear Chase argues it should not be subject to liquidated damages because (1) it hired a

---

sufficient for the Court to decline an award of liquidated damages. However, at least some relevant caselaw requires "both good faith and . . . reasonable grounds" such that liquidated damages would be "unfair to impose." *See Walsh v. Medical Staffing of America,* 580 F. Supp. 3d 216, 230 (E.D. Va. 2022), *vacated on other grounds*, No. 22-1290, 2023 WL 3735221 (4th Cir. May 31, 2023); *Richard v. Marriott Corp.*, 549 F.2d 303, 306, *cert denied*, 433 U.S. 915, 97 S. Ct. 2988, 53 L.Ed.2d 1100 (1977) (holding that the delinquent employer had to persuade the court "by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict."); *Burnley v. Short*, 730 F.2d 136, 141–42 (4th Cir. 1984) (Winter, C.J. concurring and dissenting) (noting that Fourth Circuit precedent establishes such a "two-prong test" in order to be relieved of liability for liquidated damages); *see also Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."). While the Fourth Circuit has also "previously found no abuse of discretion when the court below was convinced only of one prong," *see Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997), here, for the reasons stated below, Bear Chase has failed to establish "good faith" or "reasonable grounds" that would justify not imposing liquidated damages.

general manager who had a degree in hotel and restaurant management where he received instruction on the FLSA, who had previously administered tip pools, and who received industry news letters that addressed FLSA issues; (2) it displayed labor posters, including federal and Virginia labor posters, that informed employees of their rights to be paid a minimum wage and about the existence of tip pools generally; and (3) it employed a payroll system that would have alerted Bear Chase management if an employee was paid less than minimum wage.  (Dkt. 96).  None of these arguments are persuasive.

First, there is nothing about the general manager's education, experience, or reliance on industry newsletters that would lead a reasonable business owner to rely exclusively on him to develop and implement a complex employee payment structure that complied with the nuanced provisions of the FLSA.  Although employers are not required to seek legal counsel to help navigate the FLSA, the fact that Bear Chase chose not to do so here is an indication of the casual way in which it sought to comply with the FLSA.  A review of the record indicates that Bear Chase did not operate as a traditional restaurant with established roles, yet the ownership seemed wholly unconcerned about how their unique business model would impact their FLSA obligations.  The record suggests that Bear Chase was more concerned with how the tip pool would be apportioned rather than whether it complied with the FLSA.  Moreover, no member of the ownership group or management team undertook any affirmative steps to investigate its FLSA responsibilities even though two members of the ownership group were previously involved in FLSA litigation and knew, or should have known, the detailed nature of the statutory requirements.  (Dkt. 86).

Second, Bear Chase relies on posters, introduced at trial as Defendant's Exhibits 2 and 3, produced by the U.S. and Virginia Departments of Labor and displayed in an employee break room to demonstrate its efforts to comply with the FLSA.  (Dkt. 92, Trial Transcript at 53–74).  The

posters however only provided information that an employer "may" use a tip credit if the employer "meet[s] certain conditions."  A poster providing generalized information that an employer "may" take a tip credit cannot sufficiently inform a particular tipped employee, such as Plaintiff, that their employer did in fact use the tip credit and that their employer did so specifically with respect to that employee's salary.  (*Id*.)  This is another half measure by Bear Chase that does not constitute a good faith effort to comply with the FLSA.

Third, Bear Chase's payroll system that would have alerted management if an employee was paid less than minimum wage does not address the FLSA violations in this case, namely Bear Chase's failure to provide notice to Plaintiff of the tip credit and Bear Chase paying managers and supervisors from the tip pool.  As such, the common practice of employing a payroll system does not reflect a good faith effort to comply with the full range of Bear Chase's FLSA obligations.

Here, Bear Chase chose to pay Plaintiff less than minimum wage and as a result enjoyed a financial windfall.  Nevertheless, Bear Chase demonstrated little commitment to ensuring Plaintiff understood his rights under the FLSA.  Bear Chase's position at trial was that Plaintiff was given notice of tip credit by Mr. Suarez, but the jury clearly found its position unpersuasive.  It is reasonable to infer that the jury recognized that Bear Chase failed to memorialize its rather complicated pay structure in any written form.  There is no evidence of any contemporaneous notes, no memorandum signed by Plaintiff, and no employee handbook that could have easily and thoroughly explained the tip credit to Plaintiff.  This reflects Bear Chase's careless approach to its FLSA obligations and is further evidence of Bear Chase's lack of good faith.  Moreover, none of Bear Chase's reasons provide reasonable grounds for believing it was not acting in violation of the FLSA.

For these reasons, the undersigned recommends the Court award Plaintiff liquidated

damages in the amount of $34,245.61, in addition to the $34,245.61 the jury awarded in compensatory damages.

## Attorneys' Fees

The FLSA provides for the mandatory award of attorney's fees and costs to a plaintiff's counsel who prevails in pursuing an action under the FLSA. *See* 29 U.S.C. § 216(b) ("The court [in an FLSA] action shall, in addition to any judgment awarded to the plaintiff . . . , allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Plaintiff bears the burden of establishing that the attorneys' fees he seeks are reasonable. *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate.").

*Objections to the Record*

As an initial matter, both parties object to the Court considering certain submissions by the other party. First, Bear Chase objects to the "125-page itemized billing statement (Dkt. 88-2, Pl. Ex. 1-A), 21 additional exhibits evidencing costs (Dkt. 88, Pl. Ex. 1B-1U), and a Declaration of an expert witness, Michael Smith, to opine as to the reasonableness of those attorneys' fees and costs (Dkt. 88-24)." (Dkt. 99 at 2). Bear Chase predicates its objections on Plaintiff's failure to disclose this information pursuant to its continuing obligation under Fed. R. Civ. P. 26(a)(1)(A)(iii) and (e) as well as Plaintiff's failure to respond to an interrogatory requesting, among other information, an itemized accounting of attorneys' fees and costs. (*Id*. at 3–4). Bear Chase's objections are without merit.

It is not apparent from the plain language of Rule 26(a)(1)(A)(iii) that the reference to "damages" includes attorneys' fees and costs, especially in the context of a fee shifting statute such as the FLSA, as opposed to referring to compensatory, liquidated, or punitive damages. As

Plaintiff points out, such a disclosure made so early in the litigation would hardly be helpful and a constant updating under Rule 26(e) of attorneys' fees is unreasonable, unduly burdensome, and needlessly intrusive.  Even if Rule 26(a)(1)(A)(iii) is interpreted to include attorneys' fees, Bear Chase received a redacted retainer agreement that reflected the fee arrangement between Plaintiff and his counsel.  (Dkt. 99 at 4; Exh. 3 at 9).  This document provided sufficient information from which Bear Chase could have reasonably gauged the approximate amount of attorneys' fees at various stages of the litigation.  Bear Chase's claim that it could not properly assess its settlement position without a detailed accounting of attorneys' fees is simply not credible.  As Plaintiff correctly notes Bear Chase could at any time have made an offer of Judgment under Rule 68, which would have essentially prevented the accrual of additional fees and costs and left the issue for the Court to resolve.

Next, Bear Chase argues that the Plaintiff's submissions in support of his claims for fees and costs should be struck because Plaintiff failed to disclose the information in response to an interrogatory.  (Dkt. 99 at 3–4).  However, Plaintiff noted a timely and detailed objection to the interrogatory and Bear Chase never sought to compel a response. (Dkt. 101 at 1; Exh. 1, Supp. Resp. #2; Exh. 2, Resp. #3).  Therefore, pursuant to Local Rule 37(A), Bear Chase waived this argument.  *See* L. Civ. R. 37(A) ("After a discovery request is objected to, or not complied with, within time, and if not otherwise resolved, it is the responsibility of the party initiating discovery to place the matter before the Court by a proper motion pursuant to Fed. R. Civ. P. 37, to compel an answer, production, designation, or inspection.").

Finally, Bear Chase objects to the Declaration of Plaintiff's expert witness, Michael Smith, on the grounds that it was not disclosed sufficiently in advance of trial. (Dkt. 99 at 2–5).  In support of its objection, Bear Chase relies on Rule 26(a)(2) regarding the disclosure of expert witnesses

and the Court's Discovery Order.  (*Id*.; Dkt. 12).   However, Rule 26(a)(2) and the Court's Discovery Order pertain to expert witnesses who may testify at trial.  Mr. Smith's Declaration regarding the reasonableness of attorneys' fees pertains only to Plaintiff's post-trial motion.  For these reasons, each of Bear Chase's objections to Plaintiff's submissions in support of his application for attorneys' fees and costs are overruled, and the undersigned will consider all materials submitted by Plaintiff.

Plaintiff, in turn, objects to Bear Chase's submission of the Declaration of Sarah Aiman Belger, Esquire (Dkt. 99-4) on the grounds that it contained an "/s/" in the signature line and not an "actual signature" contrary to "the E-Filing Policies and Procedures of this Court, made applicable by Local Rule 1(A)."  (Dkt. 101 at 3).  Under these circumstances, the "/s/" attestation is sufficient for the undersigned to find that counsel adopted all representations made in her Declaration and properly affirmed "under penalty of perjury that the contents of the . . . [D]eclaration [were] true and correct."  (Dkt. 99-4).  Noting that Plaintiff cites no precedent from this District or this Circuit suggesting that exclusion is the proper remedy for a technical filing error, the undersigned overrules Plaintiff's objection and will consider the Declaration of Ms. Belger.  In doing so, the undersigned also notes that it has reviewed the entire record, including all filings by both parties and the full trial transcript, and finds Ms. Belger's Declaration adds little to the Court's analysis.

*Plaintiff's Request for Attorney's Fees*[7]

Plaintiff seeks an award of attorneys' fees for Mr. Hoffman as lead counsel, who is a seasoned attorney with significant experience litigating FLSA cases on behalf of plaintiffs, and his

---

[7]        Plaintiff's requests for costs are examined separately below.

associate, Mr. Liew. (Dkt. 88). In his initial Motion for Attorneys' Fees, Plaintiff seeks payment for 423.4 hours of Mr. Hoffman's time at a rate of $495 per hour and payment for 555.3 hours of Mr. Liew's time at a rate of $300 per hour. (*Id*. at 9–12). This request totals $376,173. Plaintiff has voluntarily reduced this request by 5% to $357,364.35. (*Id*. at 26). Plaintiff's motion is supported by a 125-page accounting of Mr. Hoffman's and Mr. Liew's legal services, records and invoices reflecting costs and expenses incurred, as well as Declarations from Mr. Hoffman, Mr. Liew, and Mr. Smith, who opined as to the reasonableness of counsels' billing rates and the effective manner in which they prosecuted this civil action. (*Id*.)

Plaintiff then filed his First Supplemental Motion for Attorneys' Fees and Costs in which he seeks an additional payment for 16.9 hours of Mr. Hoffman's time at $495 per hour and payment for 21 hours of Mr. Liew's time at $300 per hour. (Dkt. 104). This request is to compensate counsel for the time they expended responding to Defendant's Motion for Judgment. (Dkt. 102). This request seeks attorneys' fees in the amount of $14,665.50. (*Id*.) Notably counsel did not apply his voluntary 5% reduction to this request.

Plaintiff then filed his Second Supplemental Motion for Attorneys' Fees and Costs in which he seeks an additional payment for 19.1 hours of Mr. Hoffman's time at $495 per hour and payment for 7.6 hours of Mr. Liew's time at $300 per hour. (Dkt. 114). This request is to compensate counsel for the time they expended appearing at the hearing on Defendant's Motion for Judgment as well as discussions with opposing counsel, meetings with Plaintiff, and other administrative tasks. (*Id*.) This request seeks attorneys' fees in the amount of $11,734.50. (*Id*.) Again, counsel did not apply its voluntary 5% reduction to this request.

In addition to the motions properly filed by Plaintiff, Plaintiff also seeks an additional $25,297.60 in attorneys' fees associated with his Reply to Defendant's Opposition to Plaintiff's

Motion for Attorneys' Fees and Costs, his Reply to Defendant's Opposition to Plaintiff's Motion for Liquidated Damages, and "seeking to negotiate a settlement/communicate with defense counsel." (Dkt. 101 at 19). Even though Plaintiff makes this request through his reply brief, the undersigned will nonetheless consider this request.

In total, Plaintiff is requesting $409,061.95 in attorneys' fees.

*Step 1: The Lodestar Figure*

Where an award of fees is appropriate, the Fourth Circuit has set forth the standard for determining whether the fee awards are reasonable in *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235 (4th Cir. 2009). In *Robinson*, the Fourth Circuit directed that "[i]n calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id*. at 243 (citing *Grissom v. The Mills Corp*. 549 F.3d 313, 320 (4th Cir. 2008)). The Fourth Circuit next instructed that "[i]n deciding what constitutes a 'reasonable' number of hours and rate," the court should be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id*. at 243–44 (citing *Barber v. Kimbrells Inc*., 557 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting twelve factors test set forth in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989))). The undersigned, having reviewed the submissions of counsel, including Plaintiff's 125-page itemized billing

statement, as well as all pleadings filed in this case and the trial transcript, make the following findings with regard to the twelve factors set forth in *Robinson*:

(1) *The time and labor expended.*   The full prosecution of a FLSA case, regardless of the factual or legal complexities, requires a significant investment of counsel's time and labor.  Taken together, the billing records, pleadings and trial transcript reflect a thorough pre-filing investigation, a Complaint that properly alleged the two claims ultimately presented to the jury, a fulsome discovery process, a labor-intensive motions practice that included defending a challenging summary judgment motion, a settlement conference, trial preparation, a three-day jury trial, and significant post-trial motions.  The record also reflects an appropriate amount of time devoted to the development of counsels' work product, communications with opposing counsel, and meetings with Plaintiff.  Under the facts of this case, counsels' expenditure of time and labor is the most heavily weighted consideration in favor of Plaintiff's request for attorneys' fees.

(2) *The novelty and difficulty of the questions raised.*   This case did not present particularly novel or difficult issues.  This case was centered on factual disputes and issues of credibility.  The principal issues presented to the jury were whether Plaintiff was advised of the tip credit and whether other employees who participated in the tip pool were, in fact, managers or supervisors. This required the jury to resolve well-defined factual disputes and then apply those facts to the law as instructed by the Court.  The straightforward nature of the case is further supported by the relatively short period of time the jury needed to reach a verdict.

(3) *The skill required to properly perform the legal services rendered*.  Even though this case was not novel or difficult, the FLSA is a complex statutory scheme that requires a high degree of skill to navigate.  Moreover, counsel demonstrated a command of relevant substantive law and procedural law, as well as an ability to effectively try a case before a jury, and these distinct skill

sets reflect a high degree of professional competency.

(4) *The attorney's opportunity cost in pressing the instant litigation*.  There is nothing in the record regarding the attorney's opportunity costs in pressing this litigation that the undersigned finds relevant or persuasive to an award of attorneys' fees.

(5) *The customary fee for like work*.  There is little in the record that establishes the customary fee for like work.  However, the Declaration of Michael Smith, Esquire submitted by Plaintiff is sufficient to establish that Plaintiff's request is not on its face greater than the customary fee for like work.

(6) *The attorney's expectations at the outset of the litigation*.  There is nothing in the record regarding the attorneys' expectations at the outset of the litigation that the undersigned finds relevant or persuasive to an award of attorneys' fees.

(7) *The time limitations imposed by the client or circumstances*.  There is nothing in the record regarding the time limitations imposed by the client or circumstances that the undersigned finds relevant or persuasive to an award of attorneys' fees.

(8) *The amount in controversy and the results obtained*.  Clearly, Plaintiff was successful. Plaintiff submitted two theories of liability to the jury, and the jury found Bear Chase liable on both theories.  The jury's verdict was thereafter upheld by the Court.  (Dkt. 112).  Ultimately, the jury awarded Plaintiff's full request for damages in the amount of $34,245.61.  (Dkts. 83, 85).  The undersigned further finds that the amount in controversy constitutes a significant sum of money, particularly given that Plaintiff was an hourly employee who relied heavily on tips to supplement his income.  Plaintiff did not prevail on his theory that Bear Chase willfully violated the FLSA, which would have extended the statute of limitations from two years to three years pursuant to 29 U.S.C. § 255(a) and would have likely increased Plaintiff's damages award.  Plaintiff's failure to

establish willfulness is properly considered with respect to the number of reasonable hours expended, and although it results in a modest reduction of hours, Plaintiff's overall result was highly successful.

(9) *The experience, reputation and ability of the attorney*.   Mr. Hoffman is clearly a seasoned attorney with significant experience litigating FLSA cases on behalf of plaintiffs.  (Dkt. 88, Exh. 24).   He appears to have a fine professional reputation, and through the course of the litigation demonstrated a superior ability as an attorney.  (*Id*.) Similarly, Mr. Liew, as an associate to Mr. Hoffman, performed well on behalf of Plaintiff.  (*Id*.)

(10) *The undesirability of the case within the legal community in which the suit arose*. Given the straightforward nature of this case and the fee shifting provision of the FLSA in favor of a prevailing plaintiff, the undersigned finds no basis to conclude this case was undesirable within the legal community.   Counsel points to no fact unique to this matter that would indicate this was an undesirable FLSA case.[8]  Plaintiff argues that individual wage and hour claims are less desirable among attorneys than class action suits.  (Dkt. 88 at 17–18).  While this may be generally true, this does not suggest that counsels' compensation should be increased simply for taking a less complicated case.  A less complicated case will often mean less of a commitment in time and labor, particularly by an experienced attorney.  It is the Court's responsibility to ensure that the ultimate fee award is reasonable and proportionate, regardless of whether the case is a class action or an individual wage and hour claim.  For these reasons, there is nothing in the record regarding the undesirability of this case that the undersigned finds relevant or persuasive to an award of

---

[8]      Counsel does rely on parallel litigation between the parties regarding a defamation claim to support its argument that this was an undesirable case. (Dkt. 88 at 17-18).   However, the defamation case has no bearing on these FLSA claims and has no impact on the Court's analysis of what constitutes reasonable attorneys' fees in this case.

attorneys' fees.

(11) *The nature and length of the professional relationship between attorney and client*. There is nothing in the record regarding the nature and length of the professional relationship between attorney and client that the undersigned finds relevant or persuasive to an award of attorneys' fees.

(12) *Attorneys' fees awards in similar cases*.  The record contains little to no evidence regarding attorneys' fees awards in similar cases.

*The Number of Reasonable Hours Expended*

In total, Plaintiff seeks payment for 459.4 hours of Mr. Hoffman's time and 583.9 hours of Mr. Liew's time.  Bear Chase objects on the grounds that the hours requested are excessive and therefore unreasonable and further argues that counsel "over-litigated" an otherwise uncomplicated case. (Dkt. 99 at 10; Exh. 4).  Bear Chase claims that given the modest complexity of the case, an experienced counsel such as Mr. Hoffman should not have needed over one-thousand billable hours to prosecute this case.  (*Id*.)  Bear Chase argues that the discovery process and motions practice did not warrant such an investment of time and labor.  (*Id*.)  However, Bear Chase fails to identify any actions taken by counsel that were not professionally necessary or explain with particularity why certain actions took an unreasonably long time to complete.[9]

Nevertheless, in light of the *Robinson* factors, and having reviewed Plaintiff's 125-page billing statement and the full record, the undersigned finds that the number of hours reasonably expended in furtherance of this case is less than that requested by counsel.  In particular, the

---

[9]    Bear Chase argues that Plaintiff's briefs contained excessive legal citations. (Dkt. 99 at 10).  The undersigned finds this argument entirely unpersuasive particularly when one considers the briefs challenged by Bear Chase include Plaintiff's Opposition to Bear Chase's Motion for Summary Judgment (Dkt. 28) and Plaintiff's Request for Liquidated Damages (Dkt. 86).

undersigned finds that the requested billable hours related to Plaintiff's Motion for Extension of Time to Serve Defendant Chris Spring (Dkt. 4),[10] Plaintiff's Motion to Compel (Dkt. 15), Plaintiff's Opposition to Bear Chase's Motion for Summary Judgment (Dkt. 28), Plaintiff's Motion for Sanctions (Dkt. 29), Plaintiff's Motions *in Limine* (Dkts. 42, 65), Plaintiff's Reply Brief to Defendant's Opposition to Plaintiff's Motion for Liquidated Damages (Dkt. 100), and Plaintiff's Reply Brief to Defendant's Opposition to Motion for Attorneys' Fees and Costs (Dkt. 101) are excessive or were unnecessary. In support of this finding the undersigned compared the billable hours requested to the complexity of the issues addressed in the pleadings, the merits of Plaintiff's arguments, the degree of legal research necessary, and the quality of Plaintiff's legal writing and legal reasoning. The undersigned also considered the fact that Plaintiff's discovery request underlying his Motion to Compel (Dkt. 15) was found to be significantly overbroad (Dkt. 27), Bear Chase's Motion for Summary Judgment was granted as to Plaintiff's willfulness claim and Plaintiff's attempt to include kitchen staff as improper members of the tip pool was struck as untimely (Dkts. 51, 57), Plaintiff's Motion for Sanctions was denied in its entirety (Dkt. 36) as were almost all of Plaintiff's Motions *in Limine* (Dkts. 70, 74). Therefore, after careful consideration, the undersigned finds that 345 hours of Mr. Hoffman's time and 395 hours of Mr. Liew's time are the number of hours reasonably expended in furtherance of this case.

*A Reasonable Rate for Mr. Hoffman and Mr. Liew*

Plaintiff seeks attorneys' fees at a rate of $495 per hour for Mr. Hoffman and $300 per hour for Mr. Liew. (Dkt. 88 at 9–11). Bear Chase's only specific objection to counsels' hourly rates are that they increased on December 1, 2022. (Dkt. 99 at 6–7). Prior to December 1, 2022, Mr.

---

[10]     Plaintiff never effected service on Chris Spring and subsequently dismissed Mr. Spring as a defendant. (Dkts. 17, 18).

Hoffman charged $475 per hour and Mr. Liew charged $275 per hour. (*Id.*) Bear Chase's position is that it was given notice of the lower rate during discovery and the fact that Mr. Hoffman accepted this case at the lower rate reflects his view of the reasonableness of that rate. (*Id.*) Neither of Bear Chase's arguments are persuasive. First, within the context of legal billing, the increases are rather modest and thus do not suggest Mr. Hoffman's $20 per hour increase or Mr. Liew's $25 per hour increase moves counsels' billing rates out of the realm of reasonableness. Second, Bear Chase cannot reasonably claim surprise or prejudice by the slight increase in counsels' billing rates. A minor increase in a lawyers billing rate is not uncommon and is necessary to reflect business needs and general economic conditions. There is no evidence to suggest that the change in counsels' billing rate was for any improper purpose. There is also no evidence to suggest the change in billing rate altered the course of this litigation or impacted any action by either party. Therefore, the only issue to be addressed by the undersigned is whether Plaintiff's requested hourly rates are reasonable.

In *Plyler v. Evatt*, the Fourth Circuit noted that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." 902 F.2d at 277 (internal quotation marks and citations omitted). Plaintiff has satisfied this burden through the Declarations of Mr. Hoffman (Dkt. 88-1), Mr. Liew (Dkt. 88-23), and their expert, Mr. Smith (Dkt. 88-24). The undersigned finds that based on the record as a whole, Mr. Hoffman's hourly rate of $495 per hour and Mr. Liew's rate of $300 per hour are reasonable.

As a result, with respect to Mr. Hoffman, the undersigned multiplied 345 hours by a rate of $495 which equals $170,775. With respect to Mr. Liew, the undersigned multiplied 395 hours by a rate of $300 which equals $118,500. Adding these two figures together, the undersigned finds

the lodestar figure to be $289,275.

*Step 2: Consideration of Unsuccessful Claims*

Once the court determines the lodestar figure, the court should subtract fees for hours spent on unsuccessful claims. *Robinson*, 560 F.3d at 244 (internal quotation marks and citations omitted). Here, Plaintiff alleged two claims in his Complaint and both theories of liability were presented to the jury. Bear Chase was found liable on both, and the jury's verdict was thereafter upheld by the Court. (Dkt. 112.) As a result, Plaintiff prevailed on all claims.

Plaintiff did not prevail on his theory that Bear Chase willfully violated the FLSA or on several motions filed by Plaintiff. These issues were previously taken into account by the undersigned in considering the number of reasonable hours expended and to do so again here would be unfairly duplicative. For these reasons, the undersigned finds no reduction in the lodestar figure is warranted in step two of the *Robinson* analysis.

*Step 3: The Degree of Success by Plaintiff*

Finally, the Court shall "award[ ] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson*, 560 F.3d at 244 (internal quotation marks and citations omitted). As previously discussed, Plaintiff was highly successful. Plaintiff prevailed on both theories of liability presented to the jury and received his requested damages award from the jury. Therefore, the undersigned finds no reduction in the lodestar figure is warranted in step three of the *Robinson* analysis.

*Conclusion*

For the reasons set forth herein, pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 54(d), the undersigned recommends the Court award Plaintiff's counsel a total of $289,275 in attorneys' fees.

**Costs of the Litigation**

The FLSA also allows prevailing plaintiffs to recover "costs of the action." *See* 29 U.S.C. § 216(b). Plaintiff's Motion for Attorneys' Fees and Costs seeks $18,704.30 in costs. (Dkt. 88 at 13, 26). Plaintiff filed a supplemental request for an additional $1,647.75 for costs associated with the preparation of trial transcripts. (Dkt. 93). Plaintiff then filed his First Supplemental Motion for Attorneys' Fees and Costs in which he sought an additional $7.60 in costs associated with filing his Opposition to Defendant's Motion for Judgment. (Dkt. 104). Finally, Plaintiff filed his Second Supplemental Motion for Attorneys' Fees and Costs in which he sought an additional $58.52 in costs associated with appearing at the hearing on Defendant's Motion for Judgment as well as discussions with opposing counsel, meetings with Plaintiff and other administrative tasks. (Dkt. 114). In total, Plaintiff seeks a $20,418.17 reimbursement for costs.

Bear Chase objects to fees associated with Dr. Kimel, a Florida based economist who Plaintiff designated as an expert witness to testify as to damages related to Bear Chase's failure to give Plaintiff notice of the tip credit. (Dkt. 99 at 17–18). Bear Chase's objection is centered on its contention that the calculation of damages as to the tip credit claim required nothing more than calculating the difference between the required minimum wage and what Plaintiff was actually paid. (*Id.*) Bear Chase argues such an elementary math equation did not require the services of an expert witness and certainly not one who needed to travel to Virginia from Florida. (*Id.*). Bear Chase's position is correct in that the damages for the notice of the tip credit claim could be calculated using basic math. However, there were voluminous payment records entered into evidence and a summary witness to present this information in a clear manner who could also testify if needed as a damages expert is not professionally unreasonable. In addition, Bear Chase chose not to stipulate to Dr. Kimel's testimony until shortly before he was to be called as a witness.

(Dkts. 79; 92 at 3).[11]

Bear Chase's objections to Plaintiff's costs are overruled, and the undersigned finds that Plaintiff should be reimbursed in the full amount of $20,418.17.

## Recommendation

For the reasons outlined above, the undersigned United States Magistrate Judge recommends that Plaintiff's motion seeking an award of liquidated damages be **GRANTED**. The undersigned further recommends Plaintiff's motions for attorneys' fees and costs be **GRANTED** but for an amount less than Plaintiff requested. Specifically, the undersigned recommends that:

- the Court award Plaintiff liquidated damages in the amount of $34,245.61, in addition to the $34,245.61 the jury awarded in compensatory damages;

- the Court award Plaintiff's counsel a total of $289,275 in attorneys' fees;

- the Court award Plaintiff costs in the amount of $20,418.17;

- the Court award Plaintiff post-judgment interest on his compensatory damage from May 12, 2023, the date judgment was entered by the Clerk of Court in favor of the Plaintiff, in accordance with 28 U.S.C. § 1961; and

- Defendant be ordered to pay all financial obligations to Plaintiff within 30 days of the Court entering a final Order.

## Notice

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to file timely objections waives appellate review of any judgment or decision based on this Report and Recommendation.

---

[11]   The undersigned also notes that it would not have been in Plaintiff's interest to hire an expert he did not believe was necessary because if the jury had not returned a verdict in favor of Plaintiff then Plaintiff would have had to bear those costs.

_William E. Fitzpatrick_
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

March 19, 2024
Alexandria, Virginia